UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| KAREN G. MULLET | CIVIL ACTION |
|---|---|
| VERSUS | NO. 19-11851 |
| TOURO INFIRMARY, ET AL. | SECTION "A" (3) |

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss (Rec. Doc. 7)** filed by the Defendant Frances Riley pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6).[1] The Plaintiff Karen Mullet opposes the motion, (Rec. Doc. 10), and Riley replied. (Rec. Doc 17). The motion, set for submission on October 30, 2019, is before the Court on the briefs without oral argument.

### I. BACKGROUND

Mullet began working for Touro Infirmary on May 25, 2015 as a cardiac echo-tech. (Rec. Doc. 14, p. 3, Mullet's Amended Complaint). In 2017, Riley, one of Mullet's co-workers and a co-Defendant in this suit, received a promotion and became one of Mullet's supervisors. *Id*. After this promotion, Mullet says she witnessed Riley systemically terminating or forcing the resignation of numerous employees who were mainly Caucasian. *Id*. Mullet also claims that Riley used her authority as a supervisor to establish a system of preferential treatment in favor of African-American employees to the detriment of the Caucasian employees. *Id*.

---

[1] The Court notes that Mullet originally named LCMC Healthcare Partners, LLC as an additional Defendant in her initial Complaint. (Rec. Doc. 1, Mullet's Complaint). The Defendants LCMC Healthcare Partners, LLC and Riley subsequently filed this 12(b)(6) motion together. (Rec. Doc. 7, Defendant's Memorandum in Support). However, the Plaintiff amended her complaint and substituted Touro Infirmary in place of LCMC Healthcare Partners, LLC. Thus, the portion of the joint 12(b)(6) motion that only pertained to LCMC Healthcare Partners, LLC in Rec. Doc. 10 is now moot.

Although Riley initially did not target Mullet, this changed when Mullet caught her altering Mullet's time and payroll records. *Id*. at 4. Mullet even reported this conduct to management, but no action was ever taken. *Id*. Things further escalated between them in May 2018 when Riley saw Mullet having an epileptic seizure and said "[w]e can't be having this happen at work." *Id*. 4-5. Riley then refused to implement an emergency call system for Mullet, even though she installed one in an African-American's office who had a similar condition. *Id* at 5.

Ultimately, things came to a head on September 21, 2018 when she was terminated by Touro Infirmary's Human Resource Manager for falsifying her time entry from the prior day. *Id*. at 6. More particularly, Riley said she had surveillance video showing Mullet leaving work five minutes before the time Mullet reported on her "punch-out" card. *Id*. As a result, "[Mullet's] termination was [] deemed a 'Do Not Rehire' which preclude[d] her employment at any of the other Touro facilities in the Southeast Louisiana area." *Id*. "[Mullet] further contends that Touro[,] through members of its management staff[,] have purposely 'black balled' [Mullet] and in violation of law given defamatory employment references which have deprived her of employment positions for which she is qualified." *Id*. 6-7.

Thus, in her complaint, Mullet makes the followings claims against Riley: (1) race and disability discrimination under Title VII of the Civil Rights Act of 1964, the American with Disabilities Act ("ADA"), the Louisiana Employment Discrimination Law, and the Louisiana Whistleblower Law, (2) defamation, (3) intentional infliction of emotional distress ("IIED"), and (4) punitive damages. Riley opposes all four of these claims in her 12(b)(6) motion. The Court will address each of Mullet's four claims in order.

## II. STANDARD OF REVIEW

FRCP 12(b)(6) permits a court to dismiss a complaint when a plaintiff has failed to state a claim for which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal v. Ashcroft*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not mere legal conclusions portrayed as facts. *Id*. at 667 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly*, 550 U.S. at 555). Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id*. A complaint states a "plausible claim for relief" when the factual allegations contained therein, taken as true, necessarily demonstrate actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Id*.; *see also Jacquez v. Procunier*, 801 F.2d 789, 791–92 (5th Cir.1986). Lastly, the Court "will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts[.]" *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

## III. DISCUSSION

### A. Claim One – Race and Disability Discrimination

i. Title VII

The Fifth Circuit has consistently held that there is no individual liability for employees under Title VII. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir.2002) (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir.1999)). "While Title VII's definition of the term employer includes 'any agent' of an employer, Congress's purpose was merely to

import *respondeat superior* liability into Title VII." *Id*. (citing *Indest*, 164 F.3d at 262). Thus, an employee or supervisor faces liability solely in his official capacity. *See Dixon v. Primary Health Servs. Ctr.*, No.10–1490, 2011 WL 1326841, at *2 (W.D.La. Mar. 3, 2011) (citing Harvey v. Blake, 913 F.2d 226, 227 (5th Cir.1990)). Because an official-capacity suit against a supervisor or other individual is actually a suit against the employing corporation, *Indest*, 164 F.3d at 262, a plaintiff may not maintain a Title VII action against both an employer and its agent in an official capacity. *Id*.; *Smith*, 298 F.3d at 449. Accordingly, as long as the corporate employer is named as a defendant, individual employees cannot be liable to a plaintiff in either their personal or official capacities. *See Smith*, 298 F.3d at 449.

Here, because Mullet named Touro Infirmary as the employing corporate defendant, Riley cannot be liable to Mullet in either her personal or official capacity. Thus, the Court dismisses Mullet's Title VII claims against Riley.

    ii.  ADA

Similarly, co-workers and supervisors cannot be held liable under the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Courts in this district have frequently "concluded that the considerations precluding individual liability under Title VII **apply with equal force in ADA actions**." *Mays v. Bd. of Commissioners*, No. 14-1014, 2015 WL 1245683, at *5 (E.D. La. Mar. 18, 2015) (Brown, J.)(citing *Lefort v. Lafourche Parish Fire Prot. Dist. No. 3*, 2014 WL 3893312 (E.D. La. Aug. 8, 2014)) (Vance, J.) (emphasis added); *Franklin v. City of Slidell*, 936 F.Supp.2d 691, 703 (E.D. La. 2013) (Barbier, J.) ("[T]he ADA definition of 'employer' mirrors the Title VII definition. Although the Fifth Circuit has not directly addressed the question of whether an employer's agent or employee may be held liable under the ADA, this

Court recently concluded that in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit, individuals are not subject to liability under Title I of the ADA. Thus, to the extent that Plaintiff is asserting claims against the Employee Defendants under the ADA, the Court finds that they are not legally cognizable.").

Here, because Riley was Mullet's co-employee supervisor and not Mullet's employer, the Court dismisses Mullet's ADA claims against Riley.

### iii. The Louisiana Employment Discrimination Law

Next, it is "well established that 'Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.'" *Postell v. Lane*, No. 12-00527-BAJ, 2014 WL 4925665, at *4 (M.D. La. Sept. 30, 2014) (quoting *Mitchell v. Tracer Constr. Co.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003)) (citing La. Rev. Stat. 23:303(A); *Johnson v. Acosta*, No. 10-1756, 2010 WL 4025883, at *6 (E.D. La. Oct. 12, 2010)).

The Louisiana statute does not provide a cause of action against a co-employee or a supervisor. Instead, its provisions only apply to "employers" as defined in Chapter 23. *See* La. Rev. Stat. §§ 23:312-332. Under Louisiana law, the term "employer" means "a person, association, legal or commercial entity, the state, or any state agency, board commission, or political subdivision of the state ***receiving services from an employee and, in return, giving compensation of any kind to an employee***." La. Rev. Stat. § 23:302(2) (emphasis added). Based on the clear language of the statute, the analogous federal law cited above, and state case law, the Louisiana employment discrimination laws do not expose co-employees or supervisors to liability. *See, e.g., Johnson v. Integrated Health Servs., Inc.*, No. Civ. A. 01-2075, 2002 WL 31246762 (E.D. La. 2002) ("Nor is [defendant] liable under the

Louisiana anti-discrimination statute . . . which also exposes to liability 'employers,' but not individual employees."); *Mitchell v. Tracer Constr. Co.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003) (Parker, J.) ("Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.").

Here, because Riley was Mullet's co-employee supervisor and not Mullet's employer, the Court dismisses Mullet's Louisiana Employment Discrimination Law claims against Riley.

          iv.       The Louisiana Whistleblower Law

Finally, the Louisiana Whistleblower Statute provides that an "employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law . . . [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law." La Rev. Stat. § 23:967. Although the whistleblower statute itself does not define the term "employer," district courts within the Fifth Circuit have applied the definition of "employer" provided under Louisiana's Employment Discrimination Law, La. Rev. Stat. § 23:302(2), to claims brought under the whistleblower statute, La. Rev. Stat. § 23:967. *See, e.g., Jones v. JCC Holding Co.*, 2001 WL 537001, *3 (E.D. La. 2001); *Langley v. Pinkerton's Inc.*, 220 F.Supp.2d 575, 580 (M.D. La. 2002); *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 691 n.2 (W.D. La. 2011).

Here, because Riley is not an "employer" under § 23:302(2) of the Louisiana Employment Discrimination Law, the Court dismisses Mullet's Whistleblower claim.

### B. Claim Two – Defamation

To establish a defamation cause of action in Louisiana, a plaintiff must show: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Lusich v. Capital One, ACP, LLC*, 198 So. 3d 1272, 1276 (La. App. 4 Cir. 2016) (citing *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004)). Moreover, to adequately allege a defamation claim,

a plaintiff "must set forth in the [complaint] with reasonable specificity the defamatory statements allegedly published by the defendant." *Id*. (quoting *Fitzgerald v. Tucker*, 737 So. 2d 706, 713 (La. 1999)). "It is not necessary for a plaintiff to state verbatim the words on which he bases his cause of action, but he must allege a state of facts or condition of things which would show fault under article 2315." *Badeaux v. Sw. Computer Bureau, Inc.*, 929 So. 2d 1211, 1218 (La. 2006).

Here, Mullet alleges in her Amended Complaint that her "termination was [] deemed a 'Do Not Rehire' which preclude[d] her employment at any of the other Touro facilities in the Southeast Louisiana area." (Rec. Doc. 14, p. 6, Mullet's Amended Complains). Mullet also states that "Touro through members of its management staff have purposely 'black balled' [her] and in violation of law given defamatory employment references which have deprived her of employment positions for which she is qualified." *Id*. These vague allegations are not enough to make a valid defamation claim. Further, neither intra-corporate communications[2] nor communications with other employers[3] constitute communications with third parties. Accordingly, the Court dismisses Mullet's defamation claim against Riley.

### C. Claim Three – Intentional Infliction of Emotional Distress

In order to recover for an IIED claim, a plaintiff must establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew

---

[2] "Louisiana appellate courts have held that an intra-corporate communication among officers or agents of the same corporation, in connection with their duties for the corporation, are a communication of the corporation, not a publication to a third party." *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2017 WL 6623994, at *2 (E.D. La. Dec. 28, 2017) (quotations omitted).

[3] "[C]ommunications between a former employer and prospective employers of an employee enjoy a conditional or qualified privilege, and such a communication is not actionable when made in good faith for legitimate purposes." *Stone v. Louisiana Dep't of Revenue*, No. CV 12-3022, 2016 WL 3746199, at *4 (E.D. La. July 13, 2016).

that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community." *Id*. Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. "Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id*.

"[C]ases arising in the workplace are limited to situations where the distress is more than a reasonable person could be expected to endure and the offending conduct is intended or calculated to cause severe emotional distress." *Washington v. Mother Works, Inc.*, 197 F. Supp. 2d 569, 572 (E.D. La. 2002) (quoting Nicholas v. Allstate Ins. Co., 765 So.2d 1017, 1027 (La.2000)) (internal quotations omitted). Louisiana courts have limited an IIED cause of action in the workplace to cases which involve a pattern of deliberate, repeated harassment over a period of time. *Bertaut v. Folger Coffee Co.*, No. 06–2437, 2006 WL 2513175, at *3 (E.D. La., Aug. 29, 2006) (citing *Nicholas*, 765 So.2d at 1017; White, 585 So.2d at 1209; *Maggio v. St. Francis Med. Ctr., Inc.*, 391 So.2d 948 (La. App. 2 Cir.1980)). Employment disputes, even those involving discrimination and harassment, will rarely rise to the level of intentional infliction of emotional distress. *Bertaut*, 2006 WL 2513175 at *4 (citations omitted). Ultimately, "[c]onduct in the workplace, even if calculated to cause some degree of mental anguish will rarely be so severe that it will rise to the level of outrageous conduct." *Bertaut*, 2006 WL 2513175, at *4 (citing *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir.1994)).

In her complaint, Mullet points to the following five factual occurrences to justify her IIED claim against Riley:

> (1) after Mullet reported Riley's fraudulent time alterations, Riley "began to overtly threaten and intimidate [the] Plaintiff at every opportunity";

(2) while Mullet was having an epileptic seizure, Riley told her that "[w]e can't be having this happen at work";

(3) "after being aware of [Mullet's] condition and the necessity for some type of emergency call system for her in the event of another episode, no accommodation was offered or provided";

(4) Mullet's employment was terminated after she forgot "to punch out when leaving work, mistakenly believing that she had punched out previously, and when discovering the error[,] she approximated the time she left work"; and

(5) Mullet's termination was "deemed a 'Do Not Rehire' which precludes her employment at any other Touro facilities in the Southeast Louisiana area."[4]

At the current stage of this lawsuit, the Court finds that these factual allegations raise a question of fact as to the nature and extent of the emotional abuse that Riley inflicted on Mullet. Accordingly, Riley's 12(b)(6) motion as to Mullet's IIED claim is denied.

### D. Claim Four – Punitive Damages

Because Mullet's only remaining claim against Riley is for IIED, the Court hereby dismisses Mullet's claim for punitive damages against Riley under: (1) Title VII, (2) the ADA, (3) the Louisiana Employee Discrimination Law, (4) the Louisiana Whistleblower Statute, and (5) defamation. The Court will now conduct an analysis on Mullet's claim for punitive damages against Riley under IIED.

In Louisiana, punitive damages are not allowed unless expressly authorized by statute. *Mosing v. Domas*, 2002-0012 (La. 10/15/02), 830 So. 2d 967, 973. Further, Louisiana Civil Code Article 2315 serves as the basis for IIED claims. *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00), 765 So. 2d 1017, 1021. Under article 2315, punitive damages are authorized only for child pornography (article 2315.3), intoxicated drivers (article 2315.4), child molestation (article 2315.7), and domestic abuse (article 2315.8). *Moore v. Wayne Smith*

---

[4] (Rec. Doc. 14, p. 5-6, Mullet's Amended Complaint).

*Trucking, Inc.*, No. CIV.A. 14-1919, 2015 WL 471606, at *3 (E.D. La. Feb. 4, 2015). Here, Mullet's allegations do not implicate any of these limited circumstances where punitive damages are authorized under Louisiana law. Mullet has therefore failed to state a claim for punitive damages. Accordingly, Mullet's claim for punitive damages is dismissed.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss for Failure to State a Claim (Rec. Doc. 7)** filed by Riley pursuant to FRCP 12(b)(6) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** insofar as Riley seeks dismissal of Mullet's claims relating to: (1) Title VII, (2) the Americans with Disabilities Act, (3) the Louisiana Employment Discrimination Act, (4) the Louisiana Whistleblower Act, (5) defamation, and (6) punitive damages. However, the motion is **DENIED** insofar as Riley seeks dismissal of Mullet's claim for intentional infliction of emotional distress.

December 3, 2019

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE